Cabot Christianson, Esq.
Alaska Bar No. 7811089
LAW OFFICES OF CABOT CHRISTIANSON, P.C.
911 W. 8th Avenue, Suite 201
Anchorage, Alaska 99501
(907) 258-6016
cabot@cclawyers.net

Attorneys for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| In re: ) | |
| ) | |
| PENINSULA AIRWAYS, INC., d/b/a ) | |
| PENAIR, ) | **Case No.: 17-00282 GS** |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |

**DEBTOR'S RESPONSE TO THE U. S. TRUSTEE'S
MOTION TO CONVERT OR DISMISS WITH
RECOMMENDATION OF DISMISSAL**

Debtor Peninsula Airways, Inc., dba PenAir ("Debtor") responds as follows to the

*United States Trustee's Motion to Covert or Dismiss Chapter 11 Case With*

*Recommendation of Dismissal,* Docket 327 ("the Motion") as follows.

Debtor does not contest that cause exists for dismissal of this case, and that the

case should be dismissed under Section 1112(b) of the Bankruptcy Code.

**Discussion**

Section 1112(b)(4) sets forth a laundry list of standards to determine if "cause"

exists for either dismissal, or conversion to chapter 7, of a chapter 11 reorganization.

Most of the items on that list - gross mismanagement, failure to follow court orders, failure to maintain insurance, failure of a confirmed plan, etc. - have no application to this case. But currently, the case is significantly administratively insolvent, and there is one item on the list that does apply to this case and will continue to do so, for months, until and unless a plan is confirmed - nonpayment of U. S. Trustee fees under Section 1112(b)(4)(K).

**Administrative insolvency**. Filed herewith is the *Declaration of David M. Richards*, Chief Operating Officer of the Debtor, which sets forth the list of post-petition accounts payable ("A/P") as of April 22, 2018. Those payable total $4,585,193.67. Notable items on that list include the following:

a. The A/P list includes $467,299.68 due to the IRS. This amount consists of $260,302.28 in payroll taxes due for the April 10, 2018 payroll, plus $206,997.40 from the April 25, 2018 payroll. The April 10 payroll taxes are paid as of April 27, 2018. Richards Declaration, ¶3.

b. Also included on the A/P list is $801,885.69 due Petro Star, Inc., Debtor's fuel supplier. As of April 25, 2018, this vendor has placed PenAir on a COD basis. Richards Declaration, ¶4.

c. The A/P list includes $241,903.73 due to John Hancock, USA, is for Debtor's employee's 401(k) plan. This amounts includes the amounts withheld from employee salaries for the past for payrolls, as well as Debtor's discretionary match. As of today, April 27, 2018, Debtor has caught up with withholdings for two payroll periods,

LAW OFFICES OF CABOT CHRISTIANSON, P.C.
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

and now owes a total of $94,510.12 for the withholdings for the April 10 and April 25 payroll periods. Richards Declaration, ¶5.

Particularly relevant to the issue of administratively insolvency is the claim of Turbo Lease, one of Debtor's aircraft lessors. As a result of the assumption and modification of Turbo Lease's aircraft leases, at Docket 222, Debtor assumed four aircraft leases covering Saab 340B aircraft, at $27,000 per aircraft per month, plus two more aircraft on a power-by-the-hour ("PBH") basis.

Several months after that assumption, Debtor learned that its Essential Air Service ("EAS") contracts for flights out of its Boston hub would not be renewed after June 30, 2018. Debtor utilizes four Saab 340B's in its Boston operation. Debtor's Alaska 340B flights in Alaska are either unprofitable or barely profitable, and Debtor has no use for more 340B's in Alaska.

On April 26, 2018, Debtor gave notice to Turbo Lease that it was returning all six of its Turbo Lease aircraft. This potentially makes Debtor responsible for all the lease payments due for the remainder of the lease (approximately $3 million,[1] minus any mitigation resulting from Turbo re-leasing the aircraft to other lessees), plus currently outstanding charges (which Turbo Lease has estimated to be in the $600,000 range, including attorney fees and late charges), plus unknown charges resulting from the aircraft condition at the conclusion of the lease as compared to the beginning of the lease,

---

[1] See the chart at Exhibit A hereto, which calculates $3,078,000 in future lease payments from May 1, 2018 to the end of the four assumed leases, after giving effect to the shortening of the lease term on one of the aircraft due to the non-renewal of the Boston EAS routes, as detailed in Docket 222.

PAGE 3:     DEBTOR'S RESPONSE TO U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS
            H:\3306\MAIN\RESPONSE TO UST MOTION DISMISS.WPD

LAW OFFICES OF CABOT CHRISTIANSON, P.C.
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

minus deposits held by Turbo Lease. Although this Turbo Lease obligation has not been quantified, it could easily be in the range of several million dollars - all of which has chapter 11 administrative expense priority as a consequence of the aircraft lease assumptions. Absent significant concessions by Turbo Lease, confirmation of a chapter 11 plan in the face of this administrative claim is very problematical.

Administrative insolvency is not, by itself, sufficient to establish cause to convert or dismiss under Section 112(b)(4)(A). In addition to administrative insolvency, there must be the "absence of a reasonable likelihood of reorganization." Debtor readily recognizes that a successful reorganization will be a challenge in this case, but Debtor still believes that a successful reorganization is possible. This issue is moot, however, given the undisputed fact that U. S. Trustee fees are unpaid, and will likely continue to be unpaid until the eve of confirmation.

**U. S. Trustee fees.** U. S. Trustee fees are due on a quarterly basis based upon a Debtor's total disbursements. Debtor is current on its U. S. Trustee fees through to December 31, 2017.

Effective January 1, 2018, the schedule of U. S. Trustee fees changed dramatically. Prior to the change, the U. S. Trustee fee for quarterly disbursements between $5 million and $15 million was $13,000, and the fee for disbursements between $15 million and $30 million was $20,000. After the change, the fee for quarterly

LAW OFFICES OF CABOT CHRISTIANSON, P.C.
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

LAW OFFICES OF CABOT CHRISTIANSON, P.C.
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

disbursements is 1% of disbursements in excess of $1 million per quarter, with the fee capped at $250,000.[2]

For Debtor, this change of fee schedule is dramatic. Debtor's disbursements during the first quarter of 2018 were a $15,621,500. Under the old schedule, the fee on this amount would have been $20,000. Under the new schedule, the fee is $156,215 - **an increase of more than seven times for PenAir.**

This new fee works out to about $52,000 per month. To put this number into perspective, the monthly payment on a Turbo Lease aircraft is $27,000 per month. The U. S. Trustee fee is almost equivalent, for the bankruptcy estate, to having two more another 340B's on lease, sitting unused in an airplane hangar.

Another comparison is with the interest accrual on the Wexford DIP loan. That loan amount is about $4.3 million, and the 10% interest accrual works out to about $36,000 per month. The U. S. Trustee fee is about $52,000 per month. The U. S. Trustee fee is equivalent to adding an additional 14% interest - i.e., a total of 24% interest - to the interest on the DIP loan.

Debtor presumes that the U. S. Trustee's office does not have the authority to waive, reduce, or defer payment of the U. S. Trustee's fee, even if individuals in that office might agree with the Debtor that the increase in fees is unreasonably high.

---

[2]   In other words, a Debtor hits the cap once its expenditures reach $100 million per year. Debtor's annual expenditures are currently in the $60 million range.

PAGE 5:      DEBTOR'S RESPONSE TO U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS
             H:\3306\MAIN\RESPONSE TO UST MOTION DISMISS.WPD

Similarly, this Court presumably does not have the authority to reduce the amount of that fee.[3]

Given the choice between paying either payroll, payroll, taxes, aircraft fuel, or other critical payments on the one hand, versus paying the U. S. Trustee fee on the other hand, the Debtor will choose the former - every time. This means that now, and for the foreseeable future, U. S. Trustee fees are, and will, remain unpaid.

The irony is inescapable that the U. S. Trustee's own quarterly fee is itself the basis of the U. S. Trustee's Motion. Fees under the old schedule were, from a debtor's perspective, annoying but manageable. Fees under the new schedule in effect impose such a high price for bankruptcy protection that only the very tiny chapter 11 cases, and the mega chapter 11 cases, can afford to spend the amount of time that, in absence of a pre-packaged plan of reorganization, a chapter 11 debtor typically requires in order to develop and confirm a plan.

Until recently, this entire case has proceeded on the assumption that Debtor will file a proposed plan of reorganization that calls for Wexford capitalizing, and becoming an owner of, the reorganized debtor. Accordingly, Wexford controlled negotiations with Alaska Airlines concerning future contractual arrangements between Alaska Airlines and the Debtor, and in effect acted as the representative of the Debtor. As of April 24, 2018, Debtor and Wexford agreed that on a going forward basis, Debtor would speak for the Debtor, Wexford would speak for Wexford, but Wexford would not speak for the Debtor insofar as negotiations or discussions with Debtor's creditors were concerned. This

---

[3] Debtor would gladly learn that it is mistaken in this regard.

PAGE 6:   DEBTOR'S RESPONSE TO U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS
          H:\3306\MAIN\RESPONSE TO UST MOTION DISMISS.WPD

LAW OFFICES OF CABOT CHRISTIANSON, P.C.
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

recent change of events means that the likely time frame for plan confirmation will be late in the third quarter, or early in the fourth quarter, 2018.  By then, the accumulated unpaid U. S. Trustee fee will be in the half million dollar range.

**Dismissal is far preferable to conversion.**  Debtor is the oldest continually operating, family owned, airline in the world.  Debtor currently employs about 500 persons, about 350 of whom are in Alaska.  Debtor strongly supports dismissal of this chapter 11 case, as opposed to conversion.

If the case is dismissed, Debtor will continue to operate.

a. Wexford has agreed that, if this Court dismisses this case, Wexford will give at least five business days notice of any declaration of default or enforcement of its remedies on default.  A written agreement to that effect is being drafted.

b. Jetstream has agreed that it will abide, post-dismissal, with the payment arrangement that is the subject of the Debtor's and Jetstream's joint motion at Docket 314.

c. Debtor has been able to meet its basic operating expenses with the assistance of Alaska Airlines, which from time to time has pre-paid amounts due to the Debtor.  For example, Debtor normally receives, on the first day of each month, a portion of the payment due for that month on account of the capacity purchase agreement with Alaska Airlines.  Most recently, Alaska Airlines advanced approximately $500,000 of the May 1 payment a week early, on April 23, 2018.  Richards Declaration, ¶ 11.

PAGE 7:      DEBTOR'S RESPONSE TO U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS
             H:\3306\MAIN\RESPONSE TO UST MOTION DISMISS.WPD

d.  Debtor is just now entering the summer operating season, the most profitable time of year, and will be able to continue to operate and cover its ongoing expenses.[4]

There is no creditor group, or party in interest, that is better off under a conversion as opposed to dismissal. Conversion will shut down the airline, cost all the employees their jobs, trigger a huge severance pay obligation, and doom any prospect of payment to unsecured creditors. Neither the employees, Chapter 11 administrative creditors, aircraft lessors, current vendors, or Wexford, will be better off in a Chapter 7 as compared to dismissal. There is also the public interest to consider, in that conversion would shut down air service to communities that have little or no transportation alternative.

**Conclusion**

For the foregoing reason, Debtor supports the dismissal of this case.

Dated this April 27, 2018.

> LAW OFFICES OF
> CABOT CHRISTIANSON, PC
> Attorneys for Debtor
>
> By:  /s/ Cabot Christianson
>         Cabot Christianson

---

[4] It is entirely possible that Debtor will need to file a second Chapter 11 case in order to put itself on a solid, and permanently viable, financial footing going forward. However, it is premature to speculate, now, as to when that might happen, or what the shape of a subsequent Chapter 11 case might be.

PAGE 8:    DEBTOR'S RESPONSE TO U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS
H:\3306\MAIN\RESPONSE TO UST MOTION DISMISS.WPD

LAW OFFICES OF CABOT CHRISTIANSON, P.C.
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 27, 2018, a true and correct copy of the above document was served by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

By: /s/ Margaret Stroble
     Margaret Stroble

LAW OFFICES OF CABOT CHRISTIANSON, P.C.
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

PAGE 9:    DEBTOR'S RESPONSE TO U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS
H:\3306\MAIN\RESPONSE TO UST MOTION DISMISS.WPD