Michael C. Markham
Angelina E. Lim
Johnson Pope Bokor Ruppel & Burns, LLP
401 East Jackson Street, Suite 3100
Tampa, FL 33602
Telephone: (813) 225-2500
Facsimile: (813) 223-7118

Attorneys for Gerard A. McHale Jr.
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA (ANCHORAGE)**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **PENINSULA AIRWAYS INC., D/B/A PENAIR** | ) ) ) | **Case No. 17-00282** |
| | ) | |
| Debtor. | ) ) | |

**CHAPTER 11 TRUSTEE'S EMERGENCY MOTION (I) FOR ENTRY OF AN ORDER APPROVING AUCTION AND BID PROCEDURES, (B) AUTHORIZING AND SCHEDULING AN AUCTION FOR THE SALE OF THE DEBTOR'S ASSETS, AND (C) GRANTING RELATED RELIEF, AND (II) FOR ENTRY OF AN ORDER (A) APPROVING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

Gerard A. McHale, Jr., as chapter 11 trustee for the above captioned debtor (the "Chapter 11 Trustee") files this *Emergency Motion* (the "Bid Procedures and Sale Motion") *for (I) an Order (A) Approving Auction and Bid Procedures, (B) Authorizing and Scheduling an Auction for the Sale of the Debtor's Assets, and (C) Granting Related Relief* (the "Bidding Procedures Order"); *and for (II) an Order (A) Approving the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "Sale

Order"). In support of the Motion, the Chapter 11 Trustee, by and through its undersigned counsel, respectfully represents:

**PRELIMINARY STATEMENT**

1. The Chapter 11 Trustee seeks the immediate entry of an order approving the Bidding Procedures, attached as **Exhibit A**, related to an auction of the Debtor's assets, scheduling a hearing to approve the proposed sale, and establishing notice procedures related to the assumption and assignment of executory contracts and unexpired leases.

2. In this Motion, the Chapter 11 Trustee also seeks the ultimate entry of the Sale Order approving a sale to the highest and/or best bid received at auction and authorizing the assumption and assignment of certain executory contracts and unexpired leases.

**JURISDICTION AND VENUE**

4. The United States Bankruptcy Court for the District of Alaska (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

5. The legal predicates for the relief requested herein are Bankruptcy Code sections 105, 363, 365, 503, and 507 and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

6. On August 6, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

7. On November 15, 2017, the Court entered its Amended Order (i) Authorizing Secured Postpetition Financing, (ii) Granting Security Interests and According Superpriority

1  Administrative Claim Status, and (iii) Granting Related Relief [Docket No. 183] (the "<u>DIP</u>

2  <u>Order</u>").

3      8.    The DIP Order authorized the Debtor to borrow up to $3.5 million from Debello

4  Investors LLC, an affiliate of Wexford Capital LP (collectively, with Debello Investors LLC,

5  "<u>Wexford</u>"), on a senior secured, super-priority basis pursuant to the DIP Credit Agreement.

6      9.    The Debtor subsequently obtained approval of an amendment to the DIP Credit

7  Agreement, which (among other things) authorized the Debtor to borrow an additional $1.0

8  million under the DIP Facility [Docket No. 260] (the "<u>Amended DIP Order</u>").

9      10.    As the Court is aware, Wexford and the Debtor's two largest aircraft lessors

10  moved for the appointment of a chapter 11 trustee.  In connection with that motion, Wexford

11  asserted that the Debtor's assets should be sold pursuant to a Section 363 sale, and presented a

12  term sheet for the acquisition of the Debtor's assets [Docket No. 384-5].[1]  After a two-day

13  evidentiary hearing, on July 6, 2018, the Court enter its order directing the appointment of a

14  chapter 11 trustee [Docket No. 406].

15      11.    Thereafter, on July 9, 2018, the Court entered an *Order Granting Ex Parte*

16  *Application for Order Approving Appointment of Chapter 11 Trustee* approving the appointment

17  of the Chapter 11 Trustee [Docket No. 412].

18      12.    Since his appointment, the Chapter 11 Trustee has moved quickly to assess the

19  Debtor's financial circumstances and determine a path forward.  After considering all other

20  available alternatives, and after consulting with his counsel, the Chapter 11 Trustee determined

21  that a 363 sale of the Debtor's assets is the most prudent step.

---

[1] The attached Bidding Procedures do not provide for a Stalking Horse or any Stalking Horse bidder protections as requested by Wexford. The Chapter 11 Trustee reserves the right to identify a Stalking Horse with a proposed expense reimbursement of up to $100,000, but the Chapter 11 Trustee is not inclined to provide for a break-up fee.

# RELIEF REQUESTED

**A. The Bid Procedures and Form of Notice**

13. The Chapter 11 Trustee seeks approval of the Bidding Procedures attached as **Exhibit A** hereto (the "Bid Procedures"), and the entry of a Bidding Procedures Order.[2]

14. The Bid Procedures are designed to maximize value for the Debtor's estate, while ensuring a fair and orderly sale process. The Bid Procedures are transparent and represent a fair balance of the competing issues present in this case.

**B. Scheduling an Auction and Sale Hearing**

15. The Chapter 11 Trustee seeks to schedule the auction for the Acquired Assets, to the extent an auction is necessary, during the last week of September or the first week of October, 2018, at a location to be announced by the Chapter 11 Trustee. The Chapter 11 Trustee also seeks to schedule the sale hearing to approve the sale of the Acquired Assets during the first week of October, 2018. The Chapter 11 Trustee submits that this expedited sale schedule is appropriate based on the amount of time the Debtor has been in bankruptcy (almost exactly one year) and the Debtor's quickly deteriorating cash position. The Chapter 11 Trustee must sell the Acquired Assets before entering the Debtor's slow season to prevent the Debtor from running out of cash.

**C. Notice Relating to Potential Assumption and Assignment of Executory Contracts and Unexpired Leases**

16. As part of the Sale, the Chapter 11 Trustee seeks authority to assume and assign certain executory contracts and/or unexpired leases (the "Desired 365 Contracts") to the successful bidder.

---

[2] The Bid Procedures do not contain dates certain, but the general timing of the sale has been agreed upon by major constituents in the case. It is anticipated that dates certain will be agreed upon once the date of the Sale Hearing is set. Accordingly, in the event of any conflict, the terms of the Bidding Procedures Order shall prevail.

17. With respect to the Desired 365 Contracts, the Chapter 11 Trustee respectfully requests approval of the following notice procedures:

    a. No later than [fourteen (14)] days prior to the hearing to approve the Sale (the "Sale Hearing"), the Chapter 11 Trustee will file with the Court and serve on each party to a Desired 365 Contract a notice setting forth the amount of cure owed thereunder according to the Debtor's books and records (the "Cure Notice"). The Cure Notice shall state the cure amount that the Chapter 11 Trustee believes is necessary to assume such contract or lease pursuant to Bankruptcy Code section 365 (the "Cure Amount"), and notify each party that such party's lease or contract may be assumed and assigned to the successful bidder to be identified at the conclusion of the auction.

    b. No later than [seven (7)] days prior to the Sale Hearing, any objection to the Cure Amount must be filed with the Court (the "Cure Objection Deadline"). Any objection to the Cure Amount must state with specificity what cure the party to the Desired 365 Contract believes is required with appropriate documentation in support thereof. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Desired 365 Contract or other document as of the date of the Cure Notice; the non-debtor party to the Desired 365 Contract shall be deemed to have stipulated that the Cure Amount set forth in the Cure Notice is correct; the non-debtor party shall be forever barred, estopped and enjoined from asserting or claiming against the Chapter 11 Trustee or the successful bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Desired 365 Contract or that there is any objection or defense to the assumption and assignment of such Desired 365 Contract, including any argument that there exist conditions to assumption and assignment that must be satisfied under such Desired 365 Contract or that any required consent to assignment has not been given; and the non-debtor party to such Desired 365 Contract shall be forever barred from objecting to the adequacy of the successful bidder's adequate assurance of future performance and that there exists any other basis on which to object to such assumption and assignment.

**D. The Sale of Assets is an Exercise of the Chapter 11 Trustee's Sound Business Judgment**

18. Bankruptcy Code section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate;

however, bankruptcy courts have required that the authorization of such use, sale, or lease of property of the estate out of the ordinary course of business be based upon sound business justification. *See Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Asarco*, 650 F.3d at 601; *In re Cowin*, No. 13-30984, 2014 WL 1168714, at *38 (Bankr. S.D. Tex. Mar. 21, 2014). Once the Chapter 11 Trustee articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 86 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (". . . a presumption of reasonableness attaches to a Debtor's management decisions.").

19. The Chapter 11 Trustee has a sound business justification for selling the Acquired Assets pursuant to a competitive bidding process consistent with the Bidding Procedures.

20. The Chapter 11 Trustee submits that the sale process under the Bidding Procedures will generate the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Chapter 11 Trustee's determination to sell the Acquired Assets through a competitive bidding process as provided for in the Bidding Procedures is a valid and sound exercise of the Chapter 11 Trustee's business judgment.

21. Accordingly, the Chapter 11 Trustee believes that he has proposed a fair process for obtaining the highest and best offer and sale of the Acquired Assets for the benefit of the Debtor's estate and its creditors.

**F.    Request to Approve Sale Free and Clear Pursuant to 11 U.S.C. § 363(f)**

22. By this Motion, the Chapter 11 Trustee also requests that the Court approve the sale of the Acquired Assets to the successful bidder pursuant to Bankruptcy Code sections 105, 363, and 365. This portion of the relief is requested to be entered after the Sale Hearing, pursuant to a form of Sale Order to be filed prior to the Sale Hearing. The Chapter 11 Trustee submits that the sale of the Acquired Assets to the successful bidder is in the best interest of the Debtor's estate and should be approved.

23. A debtor should be authorized to sell assets out of the ordinary course of business pursuant to Bankruptcy Code section 363 and prior to obtaining a confirmed plan or reorganization if it demonstrates a sound business purpose for doing so. *See, e.g., Committee of Equity Security Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063 (2d Cir. 1983); *see also In re Gulf Oil Corp.*, 404 B.R. 407 (Bankr. S.D. Tex. 2009). Factors considered in approving a sale outside of plan include (i) the business justification, (ii) the amount of elapsed time since the filing date, (iii) whether the proposed bid procedures facilitate competitive bidding, (iv) whether the assets have been aggressively marketed, (v) the likelihood that a plan will be confirmed in the near future, (vi) the effect of disposition on the future plan, and (vii) whether the assets are increasing or decreasing in value. *Id*.

24. The disposition of the Acquired Assets will not control all terms of a future plan. The allocation of the proceeds will be determined by either a plan and/or the priorities set forth in the Bankruptcy Code, and/or express order of this Court. Further, a timely sale is important in

this case in order to preserve the continuity of services of the Debtor's employees, the Debtor's continued provision of critical air service to the Alaskan community and the avoidance of sudden shut down as a result of reduced liquidity.

25. The Chapter 11 Trustee requests that the Court approve the sale of the Acquired Assets free and clear of all liens, claims, and encumbrances. In evaluating such a sale, a court must balance the need for flexibility with the concern of affected creditors. *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989). The Court must also determine that creditors' lien rights are adequately protected and that the offered price is the highest price and/or best terms obtainable under the circumstances in the particular case. *Id.*; *In re Beker Indus. Corp.*, 63 B.R. 474, 477–78 (Bankr. S.D.N.Y. 1986).

26. The Chapter 11 Trustee maintains that at least one of the five subsections of section 363(f) will be satisfied and, therefore, the Chapter 11 Trustee may sell the Acquired Assets free and clear of all liens, claims, and encumbrances. Specifically, the Chapter 11 Trustee submits that any such lien, claim, or encumbrance will be adequately protected by attachment to the net proceeds of the sale, subject to any claims and defenses the Chapter 11 Trustee may possess with respect thereto and/or the Chapter 11 Trustee will obtain the consent of the party holding the lien, claim or encumbrance. *See In re Wells*, 296 B.R. 728, 734 (Bankr. E.D. Va. 2003) (holding that a chapter 7 trustee could sell property free and clear of equitable interest in property with interest to attach to proceeds). Accordingly, the Chapter 11 Trustee requests that the Acquired Assets be sold to the successful bidder free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances attaching to the proceeds of the sale of the Acquired Assets.

**G.   Authorization of Assumption and Assignment of Executory Contracts and Unexpired Leases**

27.   To enhance the value to the Debtor of the proposed sale, the Chapter 11 Trustee requests approval under Bankruptcy Code section 365 of the Debtor's assumption and assignment of the Desired 365 Contracts to the successful bidder. The Chapter 11 Trustee further requests that the Sale Order provide that the Desired 365 Contracts will be transferred to, and remain in full force and effect for the benefit of the successful bidder notwithstanding any provisions in the Desired 365 Contracts, including those described in Bankruptcy Code sections 365(b)(2) and (f)(1) and (3) that prohibit such assignment.

28.   Adequate assurance of future performance depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *EBG Midtown S. Corp. v. McLaren/Hart Env. Eng'g Corp.* (*In re Sanshoe Worldwide Corp.*), 139 B.R. 585, 593 (S.D.N.Y. 1992); *In re Rachels Indus., Inc.*, 109 B.R. 797, 803 (Bankr. W.D. Tenn. 1990); *see also In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

29.   The Chapter 11 Trustee will present evidence at the Sale Hearing to demonstrate the financial credibility, willingness, and ability of the successful bidder to perform under the

1  Desired 365 Contracts.  The Sale Hearing thus will afford the Court and other interested parties

2  the opportunity to evaluate the ability of the successful bidder to provide adequate assurance of

3  future performance under the Desired 365 Contracts, as required under Bankruptcy Code section

4  365(b)(1)(C).  Further, as set forth above, the Chapter 11 Trustee will give notice to all parties to

5  the Desired 365 Contracts of their intention to assume the Desired 365 Contracts and what the

6  Chapter 11 Trustee believes are the Cure Amounts.  Finally, the Chapter 11 Trustee understands

7  that assumption and assignment of certain licenses and permits with the FAA, Department of

8  Transportation and other regulatory authorities shall be subject to their respective approvals.

9  Based on the foregoing, the Court should authorize the Chapter 11 Trustee to assume and assign

10  the Desired 365 Contracts to the successful bidder.

11       30.     Accordingly, the Chapter 11 Trustee requests that the Court (i) enter a Bidding

12  Procedures Order; (ii) schedule the Sale Hearing to consider the Sale Order; and (iii) grant the

13  Chapter 11 Trustee other just relief.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

15       31.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or

16  lease of property other than cash collateral is stayed until the expiration of 14 days after entry of

17  the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides

18  that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under

19  § 365(f) is stayed until the expiration of 14 (fourteen) days after the entry of the order, unless the

20  court orders otherwise."  Here, an expeditious closing of a sale is necessary and appropriate to

21  maximize value for the estate.  Accordingly, the Chapter 11 Trustee requests that the Court

22  waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

32. Accordingly, the Chapter 11 Trustee requests that the Court (i) enter the Bidding Procedures Order; (ii) schedule the Sale Hearing to consider the Sale Order; and (iii) grant the Chapter 11 Trustee other just relief.

**NOTICE**

33. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Alaska; (b) the Debtor's 20 largest unsecured creditors; (c) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002 (Attn: Joshua Wolfshohl), and via email to JWolfshohl@porterhedges.com, counsel to the DIP Lender; (d) the United States Attorney's Office for the District of Alaska; (e) the Internal Revenue Service; (f) any party known to have asserted a Lien on the Acquired Assets; (g) all known affected federal, state, and local regulatory, and taxing authorities; (h) any buyer that signed a nondisclosure agreement with respect to the Acquired Assets; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service. Due to the nature of the relief requested, the Chapter 11 Trustee submit that no other or further notice need be provided.

## CONCLUSION

34. The Chapter 11 Trustee respectfully requests that the Court enter the Bidding Procedures Order now and the Sale Order after the Sale Hearing and granting such other and further relief as is just and proper.

Dated: August 15, 2018

          **JOHNSON POPE BOKOR RUPPEL & BURNS, LLP**

          By:   /s/ *Michael C. Markham*
                   Michael C. Markham
                   State Bar No. 768560
                   401 East Jackson Street, Suite 3100
                   Tampa, Florida 33602
                   Telephone: (813) 225-2500
                   Fax: (727) 462-0365
                   mikem@jpfirm.com
          **COUNSEL FOR CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

I certify that on August 15, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System in the United States Bankruptcy Court for the District of Alaska.

                                   /s/ *Michael C. Markham*
                                   Michael C. Markham

**EXHIBIT A TO MOTION**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

In re                                      )
                                           ) Case No. 17-00282-GS
Peninsula Airways, Inc.,                   )
                                           )
    Debtor.                                )
_____)

BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS

On August [__], 2018, the United States Bankruptcy Court for the District of Alaska (the "Court") entered an "Order (A) Approving Auction and Bidding Procedures, and (B) Authorizing and Scheduling An Auction for the Sale of Debtor's Assets" (the "Bidding Procedures Order"), which approved these procedures by which Gerard A. McHale, Jr., as trustee for the Debtor's estate (the "Trustee"), is authorized to conduct an auction for the sale of substantially all of the Debtor's assets (collectively, the "Assets").

1.     <u>Assets to be Sold Free and Clear of Any and All Claims and Interests</u>. The Trustee seeks to sell substantially all of the Assets. Except as otherwise provided in the asset purchase agreement between the Trustee and the purchaser of the Assets, all of the Debtor's right, title, and interest in and to the Assets will be sold free and clear of all liens, claims, and interests (collectively, the "Encumbrances") to the maximum extent permitted by section 363 of the Bankruptcy Code (other than certain permitted liens and assumed liabilities), with the Encumbrances to attach to the net proceeds of the Sale with the same validity and priority as those Encumbrances held with respect to the Assets. The Trustee also seeks to assume and assign certain executory contracts and leases to the purchaser pursuant and subject to section 365 of the Bankruptcy Code.

2. <u>Access to Diligence Materials</u>.

a. To participate in the bidding process and receive access to due-diligence information (the "<u>Diligence Materials</u>"), a party must submit to the Trustee an executed non-disclosure and confidentiality agreement in form and substance satisfactory to the Trustee and evidence satisfactory to the Trustee demonstrating the party's financial capability to close a transaction involving some or all of the Assets (a "<u>Proposed Transaction</u>").

b. A party who qualifies for access to Diligence Materials is an "<u>Approved Bidder</u>." All due-diligence requests must be directed to the Trustee. The Trustee shall provide to each Approved Bidder reasonable due-diligence information, as requested by the Approved Bidder in writing, as soon as reasonably practicable after the request, and the Trustee shall post all written due diligence provided to any Approved Bidder to the Debtor's electronic data room.

c. For any Approved Bidder who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Trustee reserves the right to withhold any Diligence Materials that the Trustee, in his sole discretion, determines are sensitive or otherwise not appropriate for disclosure to the Approved Bidder.

d. Only Approved Bidders, Wexford Capital, and Alaska Airlines, Inc., will be eligible to receive due-diligence information and access to the Debtor's electronic data room and to additional non-public information regarding the Debtor.

e. Each Approved Bidder shall comply with reasonable requests for additional information by the Trustee regarding the ability of the Approved Bidder to consummate a Proposed Transaction. Failure by an Approved Bidder to comply with reasonable requests for additional information may be a basis for the Trustee to determine that a bidder is no longer an Approved Bidder or that a bid is not a Qualified Bid. The Trustee shall maintain in confidence

any confidential information acquired from Approved Bidders in accordance with the confidentiality agreements entered into with Approved Bidders.

3. <u>Bid Qualification Process</u>. To be eligible to participate in the Auction (defined below), each offer, solicitation, or proposal (each, a "<u>Bid</u>"), and each party submitting such a Bid (each, a "<u>Bidder</u>"), must be determined by the Trustee to satisfy each of the following conditions:

a. <u>Good Faith Deposit</u>. Each Bid must be accompanied by a deposit in the amount of $550,000.00 to a segregated account to be identified and established by the Trustee (the "<u>Good Faith Deposit</u>").

b. <u>Same or Better Terms</u>. The Bid must be on terms that are substantially the same or better than the terms of the Asset Purchase Agreement prepared and distributed by the Trustee (the "<u>Form APA</u>").

c. <u>Asset Purchase Agreement</u>. A Bid shall include a copy of the Form APA marked to show all changes requested by the Bidder and an executed original of the Form APA with proposed changes incorporated. A Bid may not be considered as qualified for the Auction if the Bid contains additional material representations and warranties, covenants, closing conditions, or termination rights. The Bid should include the following information: (a) the aircraft to be acquired or the aircraft leases to be assumed; (b) the office/hangar locations to be assumed; (c) the employees to be retained; and (d) the routes to be continued and any anticipated interruption in service.

d. <u>Corporate Authority</u>. The Bid must include written evidence reasonably acceptable to the Trustee demonstrating appropriate corporate authorization to consummate the Proposed Transaction.

  e. <u>Proof of Financial Ability to Perform</u>. The Bid must include written evidence from which the Trustee can conclude that the Bidder has the necessary financial ability to close the Proposed Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in connection with such Proposed Transaction.

  f. <u>Contingencies</u>. A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the closing of the Proposed Transaction.

  g. <u>Irrevocable.</u> A Bid must be irrevocable through the Auction <u>and</u> if the Bid is accepted as the Successful Bid, that Bid shall continue to remain irrevocable, subject to the Bidding Procedures.

  h. <u>Bid Deadline</u>. Regardless of when a party becomes an Approved Bidder, the following parties must receive a Bid in writing, on or before September ___, 2018 at _____. (Alaska time) (the "<u>Bid Deadline</u>"):

   (1) the Trustee, Gerard A. McHale, Jr., McHale, P.A., 1601 Jackson Street, Suite 200, Fort Myers, Florida 33901, jerrym@thereceiver.net;

   (2) the Trustee's counsel, Michael C. Markham, Johnson Pope Bokor Ruppel & Burns, LLP, 401 East Jackson Street, Suite 3100, Tampa, Florida 33602, mikem@jpfirm.com;

A Bid will not be considered as qualified for the Auction if the Bid is not received by the Trustee in writing by the Bid Deadline.

4. <u>Amount of Bid</u>. A Bid must specify the total consideration the Bidder will pay, which must include, at a minimum, $5,500,000 in cash (which can include application of the Good Faith Deposit), without set-off, holdback, or any other deduction. If the proposed consideration

includes the assumption of liabilities of the Debtor, the liabilities to be assumed shall be identified with sufficient detail to enable the Trustee to determine the value of those liabilities.

5.  Adequate Assurance of Future Performance. Each Bid shall be accompanied by evidence that the Bidder can provide adequate assurance of future performance (the "Adequate Assurance Information"), including (a) information about the Bidder's financial condition, such as federal tax returns for the immediately preceding two years, a current financial statement, or bank account statements, (b) information demonstrating (in the Trustee's reasonable business judgment) that the Bidder has the financial capacity to consummate the Proposed Transaction, (c) evidence that the Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (d) the identity and exact name of the Bidder (including any equity holder or other financial backer if the Bidder is an entity formed for the purpose of consummating the Proposed Transaction), (e) evidence satisfactory to the Trustee that the Bidder is qualified to own and operate a Part 121 air carrier pursuant to applicable law, and (f) such additional information regarding the Bidder as the Bidder may elect to include. By submitting a Bid, Bidders agree that the Trustee may disseminate their Adequate Assurance Information to counterparties to contracts and leases affected by the Bid.

6.  The Trustee will review each Bid to determine, in his discretion, whether it meets the requirements set forth above. A Bid received from a Bidder before the Bid Deadline that meets the above requirements, as determined by the Trustee, shall constitute a "Qualified Bid," and the Bidder will be a "Qualified Bidder." The Trustee shall inform Bidders whether or not their Bids have been designated as Qualified Bids no later than 24 hours after such Bids are received and

shall contemporaneously provide copies of all Qualified Bids to all Qualified Bidders by electronic means.

B.     <u>Auction</u>.

7.     If only one Qualified Bid is received by the Bid Deadline, the Trustee will not conduct an auction. The Bidder that submitted the Bid will be the Successful Bidder, and the provisions of paragraph D.2 below shall not apply.

8.     If more than one Qualified Bid is received by the Bid Deadline, the Trustee will conduct an auction (the "<u>Auction</u>") to determine the highest and best Qualified Bid using the following procedures:

    (a)     Only Qualified Bidders may participate in the Auction.

    (b)     Before the Auction, the Trustee shall provide copies of all Qualified Bids to all Qualified Bidders.

    (c)     Each Qualified Bidder participating in the Auction must confirm that it has not engaged in collusion with respect to the bidding or sale of the Assets.

    (d)     The Auction shall take place on _____, 2018 at 10:00 a.m. (Alaska time) at _____, or such other place and time as the Trustee may choose.

    (e)     The Trustee and his professionals shall direct and preside over the Auction. At the start of the Auction, the Trustee shall announce the Qualified Bid that is deemed to be the highest and best (the "<u>Auction Baseline Bid</u>").

    (f)     Only the Trustee, the Debtor, Qualified Bidders, Wexford Capital and Alaska Airlines, along with their representatives, shall attend the Auction in person, and only Qualified Bidders will be entitled to make any Bids at the Auction.

    (g)     An "<u>Overbid</u>" is any bid made at the Auction after the Trustee's announcement of an Auction Baseline Bid. To submit an Overbid, a Bidder must satisfy the following conditions:

        (i)     Any Overbid after the Auction Baseline Bid shall be made in

      (ii)    increments valued at not less than $200,000 as determined by the Trustee. Additional consideration in excess of the amount set forth in an Auction Baseline Bid may include cash or non-cash consideration.

      (ii)    An Overbid must comply with the conditions for a Qualified Bid set forth above, except that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Trustee accepts a higher Overbid.

  (h)    The Trustee may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time to make subsequent Overbids) for conducting the Auction so long as those rules are not inconsistent with these Bidding Procedures or the Form APA.

  (i)    The Auction shall continue until the Trustee determines in his reasonable business judgment that there is a highest and best Qualified Bid at the Auction for all of the Assets (each, a "<u>Successful Bid</u>") and each Bidder submitting such Successful Bid, a "<u>Successful Bidder</u>"). The Auction shall not close unless and until all Bidders that have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-prevailing Overbids and the Successful Bidder has submitted a fully executed purchase agreement memorializing the terms of the Successful Bid. Within 24 hours after the end of the Auction, the Trustee shall file a notice with the Court identifying (with specificity) the Successful Bidder for the Assets. The Trustee shall not consider any Bids submitted after the conclusion of the Auction and any and all such Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

  (j)    All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Form APA, the Auction, or the construction and enforcement of any documents related to a Proposed Transaction.

  (k)    Wexford Capital and Alaska Airlines, may each attend the Auction even if it is not a Qualified Bidder, but may not bid at the Auction unless it submitted a Qualified Bid by the Bid Deadline.

9.    <u>Sale Hearing</u>. A hearing to approve a sale (the "<u>Sale Hearing</u>") based on Successful Bid shall take place on October ___, 2018 at __:__ _.m. Alaska Time in Courtroom ___, on the

[_____] floor of the United States Courthouse, 222 West Seventh Avenue, Anchorage, Alaska 99513.

10.   <u>Deadline to Object to Sale</u>. All objections to the proposed sale must be filed [2] days before the Sale Hearing.

11.   <u>Return of Deposits</u>. The Good Faith Deposits of all Bidders shall be held by the Trustee in a segregated account, and will not become part of the Debtor's estate. Within three business days after the conclusion of the Sale Hearing, the Trustee shall return the Good Faith Deposits of all Bidders that were not determined to be the Successful Bidder.

| Event | Date |
|---|---|
| Hearing re: Motion for Bidding Procedures | August ___, 2018 |
| Service of Bidding Procedures Order | [2] days from entry of Order |
| Bid Deadline | September ___, 2018 |
| Assumption/Assignment and Cure Notice | [14] days before Sale Hearing |
| Cure Objection Deadline | [7] days before Sale Hearing |
| Sale Objection Deadline | [2] days before Sale Hearing |
| Auction | [__] days before Sale Hearing |
| Sale Hearing | October ____, 2018 |
| Adequate Assurance Objection | [2] days before Sale Hearing |